Lawrence H. SCHLANG and Olen Rae Goodwin, Plaintiffs,

v.

KEY AIRLINES, INC., a Delaware corporation, Bain Investments, Inc., a Massachusetts corporation, Presidential Airways, Inc., a Delaware corporation, Coleman Andrews, James Bridges, William F. Deaton, Steven W. Wilson, Donald Kyker, jointly and severally, and Does I–X, Defendants.

No. CV–S–86–838–PMP (LRL).

United States District Court, D. Nevada.

Jan. 25, 1994.

Jeffrey Watkiss, Jack Chorowsky, Powell, Goldstein, Frazer & Murphy, Washington, DC, Robert Martin, Hale, Lane, Peek, Dennison & Howard, Las Vegas, NV, for plaintiffs.

Michael L. Lowry, Ford & Harrison, Atlanta, GA, Don Brookhyser, Jolley, Urga, Wirth & Woodbury, Las Vegas, NV, Harry Risetto, Neal D. Mollen, Morgan Lewis & Bockius, Washington, DC, Gary Moss, Morgan Lewis & Bockius, Las Vegas, NV, for defendants.

## ORDER

PRO, District Judge.

Before the Court is a Joint Motion to Vacate (# 380A) filed by both Plaintiffs and Defendants on November 10, 1993. An Opposition (# 393) and Errata (# 394) were filed by Plaintiffs' attorney of record, Jack E. Kennedy ("Kennedy") on November 30, 1993, and December 1, 1993, respectively. Defendants filed a Reply (# 399) on December 30, 1993.

Also before the Court is a Motion for Attorneys Fees and Expenses (# 374) filed by Kennedy on October 20, 1993. Defendants filed an Opposition (# 379) on November 8, 1993. Kennedy filed a Reply (# 388) on November 23, 1993. Kennedy also filed a Motion to Perfect Attorney's Lien (# 382) on November 12, 1993, and an Errata (# 385) to that motion on November 19, 1993. Plaintiffs Lawrence H. Schlang ("Schlang") and Olen Rae Goodwin ("Goodwin") filed Oppositions (## 396 and 397) on December 30, 1993, and January 3, 1994, respectively. No Reply was filed.

## I. FACTS

Plaintiffs Schlang and Goodwin filed a Complaint alleging that Defendant Key Airlines, Inc. ("Key Airlines"), wrongfully terminated them in violation of the Railway Labor Act, 45 U.S.C. §§ 151–188, and several pendent state law claims. Plaintiffs also asserted claims under the False Claims Act, 31 U.S.C. § 3729, and claimed they had been

terminated for complaining about alleged violations of the Federal Aviation Regulations.

The False Claims Act count was dismissed at the summary judgment stage, while the rest of the claims were resolved after a trial before the Honorable Roger D. Foley. On July 27, 1992, Judge Foley issued his ruling. *See Schlang v. Key Airlines, Inc.*, 794 F.Supp. 1493 (D.Nev.1992). Judge Foley found for Defendants on virtually all counts. However, on the retaliatory discharge claim in violation of the Railway Labor Act, Judge Foley found that had Plaintiffs not accepted other employment, Key Airlines would have discharged them in retaliation for their involvement in a union organizing campaign. As a result, Judge Foley determined that a punitive damage award in the amount of $500,000 was warranted. These damages were awarded jointly and severally against Key Airlines, and its officers Coleman Andrews, Steve W. Wilson, James Bridges, William Swaim and Thomas Kolfenbach.

Both sides decided to appeal. Defendants appealed the portion of Judge Foley's decision pertaining to the Railway Labor Act claims and the award of punitive damages. Plaintiffs appealed Judge Foley's August 16, 1989 Order which granted (1) Defendants' motion to strike Plaintiffs' untimely opposition to Defendants' motion for summary judgment on the False Claims Act count, and (2) Defendants' Motion for Summary Judgment on the False Claims Act count.

Throughout these proceedings and through the issuance of Judge Foley's Order, Plaintiffs were represented by their attorney of record, Jack Kennedy. At the outset of the litigation, Plaintiffs' and Kennedy entered into an Attorney/Client Retainer Agreement, pursuant to which Kennedy was to receive "a fifty percent (50%) contingency fee due and payable upon receipt of judgment or settlement" of Plaintiffs' case. *See* Motion to Perfect Attorney's Lien, Exhibit "1". Accordingly, on September 18, 1992, Kennedy filed the first Notice of Attorney's Lien (# 348) with the Court.

It would appear that after Judge Foley's ruling, but prior to the commencement of the appeal, Plaintiffs and Kennedy got into a dispute regarding the fees Kennedy would charge to pursue an appeal on Plaintiffs' behalf. Consequently, Plaintiffs decided to employ different counsel to handle their appeal.

While the case was on appeal to the United States Court of Appeals for the Ninth Circuit, counsel for Defendants and Plaintiffs' new counsel entered into settlement negotiations. Plaintiffs and Defendants reached an agreement, and on October 8, 1993, counsel for both parties executed a Settlement Agreement.[1] As a result, on October 14, 1993, the Ninth Circuit granted the parties joint motion to dismiss their appeals. Kennedy then filed a second Notice of Attorney's Lien (# 375) on October 26, 1993. The case is now before the Court to resolve the issues presented by the various motions filed after the Ninth Circuit's dismissal.

## II. *DISCUSSION*

### A. Motion for Attorney's Fees and Expenses (# 374)

Kennedy has filed a Motion for Attorney's Fees and Expenses (# 374) which essentially renews an earlier Motion for Attorney's Fees and Expenses (# 344) filed by Plaintiffs.[2] Consideration of the earlier motion which was stayed by an Order (# 365) of this Court pending an appeal by both parties. Nonetheless, whether a Motion to Substitute Counsel has been filed with this Court or not, Kennedy no longer represents Plaintiffs' interests in this litigation. By making this Motion, Kennedy is attempting to stand in Plaintiffs' place to collect fees on their behalf. However, an attorney fee award is the property of the party and not his attorney. *Evans v. Jeff D.*, 475 U.S. 717, 730–31 n. 19, 106 S.Ct. 1531, 1538–39 n. 19, 89 L.Ed.2d 747 (1986). Thus, as Kennedy is no longer representing Plaintiffs, and the present Motion is not made by Plaintiffs, Kennedy lacks stand-

---

1. Under the terms of the agreement, Defendants agreed to pay Plaintiffs the sum of $390,000.

2. Defendants filed an Opposition (# 349) to the original Motion on September 21, 1992. Plaintiffs filed a Reply (# 354) on October 8, 1992.

ing to pursue a claim of attorneys fees and his Motion (# 374) must be denied.

■■■■ Furthermore, even if the Court were to find that Kennedy has standing to assert a claim of attorneys fees against Defendants, such a claim would fail on the merits. Kennedy basically argues in the original Motion (# 344) that Defendants' attorneys have engaged in bad faith conduct by continuing to litigate this cause of action "well after it was obvious from the clear and convincing evidence that Defendants' had interfered with and attempted to interfere with Plaintiffs' rights to form a union." Plaintiffs' Motion for Attorney's Fees (# 344) at 3. As Defendants have successfully defended against the majority of the claims brought against them, this vague bad faith contention is insufficient to justify a departure from the "American Rule" that each party bear the cost of his or her own legal representation. *See Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975).[3]

B. Motion to Perfect Attorney's Lien (# 382)

Kennedy has also filed a Motion to Perfect Attorney's Lien pursuant to § 18.015 of the Nevada Revised Statutes ("NRS"). Prior to filing this Motion, Kennedy filed two Notices of Attorney's Lien with the Court. The first Notice (# 348), filed on September 18, 1992, declared an attorney's lien for attorney's fees and costs, which by contract amounted to 50% of all amounts recovered, and costs expended or incurred up to that date. The second Notice (# 375), filed on October 26, 1993, does not specify an amount, but the Motion to Perfect (# 382) seeks attorney's fees in the amount of $470,781.00 and unreimbursed costs in the amount of $51,768.50. Because the Court finds that Kennedy did

not properly perfect his purported liens until after settlement between the parties occurred, his Motion to perfect and enforce the attorney's lien must be denied.

The statutory prerequisites to perfecting an attorney's lien are set forth in the attorney's lien statute which provides:

An attorney perfects his lien by serving notice in writing, in person or by certified mail, return receipt requested, upon his client and upon the party against whom his client has a cause of action, claiming the lien and stating the interest which he has in any cause of action.

NRS § 18.015(2).[4]

■■■ Kennedy's filing of the first Notice on September 18, 1992, occurred well before the time settlement was reached in this case. However, the statute clearly provides that notice of the lien must be given to the client and to the party against whom the client has a cause of action "in person or *by certified mail, return receipt requested.*" At the time Kennedy filed the first Notice with the Court, he neither gave notice in person nor by certified mail to the parties involved. Rather, Kennedy sent notice to the parties via regular mail.

■■■ Attorney's liens in Nevada are creatures of statute. As such, the notice requirements of the statute must be met before the lien may be deemed properly perfected. To find otherwise, would effectively eliminate the specifically enumerated avenues of notice that are set forth in the statute. Therefore, the Court finds that since Kennedy failed to give notice in accordance with the requirements of § 18.015(2), his lien was not properly perfected.

Kennedy ultimately gave proper notice via certified mail to all the parties. This notice occurred on October 22, 1993, and was clear-

---

3. The purpose of the American Rule is "to avoid penalizing a party 'for merely defending or prosecuting a lawsuit.'" *Rohm & Haas Co. v. Crystal Chemical Co.*, 736 F.2d 688, 690 (Fed.Cir.1984). In *Alyeska Pipeline,* the Supreme Court affirmed the American Rule that, absent express statutory authority, bad faith or willful disobedience of a court order, each party should bear the cost of its own attorney's fees. *Zambrano v. City of Tustin,* 885 F.2d 1473, 1481 (9th Cir.1989).

4. While the wording of the statute is not as clear as it might be, Kennedy's argument that the statute can be interpreted to allow notice to be perfected in one of three ways—in writing, in person, or by certified mail—is unpersuasive. Such an interpretation would mean that oral notification would be sufficient as long as it was somehow made in person. Moreover, the certified mail requirement would be rendered utterly superfluous.

ly sufficient to perfect Kennedy's lien. However, the lien statute further provides as follows:

The lien attaches to any verdict, judgment or decree entered and to any money or property which is recovered on account of the suit or other action, *from the time of service of the notices required by this section.*

NRS § 18.015(2) (emphasis added).

■ Kennedy did not properly perfect his lien until at least October 22, 1993. The evidence presented to the Court indicates that a settlement agreement was entered into by Plaintiffs and Defendants on October 8, 1993, and the proceeds of the settlement were deposited in an escrow account prior to Kennedy's proper perfection of his lien interest. Because Kennedy failed to properly perfect his lien prior to settlement, there no longer existed any proceeds to which the lien could attach. Thus, the lien is unenforceable.

■ Furthermore, the Court's finding on this issue is consistent with similar attorney's lien statutes as recognized in the opinion of the United States Bankruptcy Court in *In re Nicholson,* 57 B.R. 672 (D.Nev.1986). In that case it was noted that a under a similar Illinois attorney's lien statute "the lien attached only to property or money acquired after the notice of lien had been served." *Id.* at 675 (citing *Kallen v. Litas,* 47 B.R. 977, 984–85 (N.D.Ill.1985)).[5]

## C. Plaintiffs' and Defendants' Joint Motion to Vacate (# 380A)

Pursuant to their settlement agreement, Plaintiffs and Defendants have jointly moved to vacate the decision and judgment of the Court as reported in *Schlang v. Key Airlines, Inc.,* 794 F.Supp. 1493 (D.Nev.1992). The only opposition to this Motion was filed by Kennedy who argues that the negotiated settlement in this case was somehow a surreptitious attempt to circumvent his attorney's liens. While this Court has already

determined that Kennedy's liens were never properly perfected and are thus unenforceable, other issues must be considered in determining whether the motion to vacate should be granted.

■ In *Ringsby Truck Lines, Inc. v. Western Conference of Teamsters,* 686 F.2d 720 (9th Cir.1982), the Ninth Circuit reasoned that "a district court is not required to vacate a judgment pursuant to settlement because, otherwise, 'any litigant dissatisfied with a trial court's findings would be able to have them wiped from the books.'" *Bates v. Union Oil Co. of California,* 944 F.2d 647, 650 (9th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1761, 118 L.Ed.2d 424 (1992) (citing *Ringsby,* 686 F.2d at 721). Furthermore,

When the parties seek vacatur as a condition of settlement, the district court may refuse to vacate the judgment. In deciding whether to vacate the judgment, [the Ninth Circuit] has directed the district courts to balance "the competing values of finality of judgment and right to relitigation of unreviewed disputes."

*Bates,* 944 F.2d at 650 (citing *Ringsby,* 686 F.2d at 722).

■ The power of this Court to vacate a prior judgment is well within its discretion. *See National Union Fire Ins. Co. v. Seafirst Corp.,* 891 F.2d 762, 765 (9th Cir.1989) ("[W]e review for abuse of discretion"). In making its decision, the Court must consider both the public and private equities involved.

■ Plaintiffs and Defendants have reached a settlement in this case and, pursuant to the settlement agreement, have dismissed their respective appeals with the Ninth Circuit and have filed a Joint Motion to Vacate with this Court. The Court finds, in applying the *Ringsby* balancing approach that, for the reasons set forth below, the balance tips in favor of vacatur and the Joint Motion will be granted. However, the deci-

---

5. Note that the Court's finding that Kennedy failed to properly perfect the attorney's lien does not leave Kennedy entirely without a remedy. Even where an attorney has not properly perfected his lien or there are no proceeds to which a lien may attach, the attorney still retains the

right to sue the client on the contract at law. This is exactly the course Kennedy has already chosen by filing an action against his former clients in the Second Judicial District Court of the State of Nevada in and for the County of Washoe.

sion and judgment will only be vacated with respect to the award of punitive damages.

The Ninth Circuit has noted that it favors a policy of encouraging settlement. *See, e.g., Ahern v. Central Pac. Freight Lines,* 846 F.2d 47, 48 (9th Cir.1988). It is clear that by vacating the award of punitive damages the Court will be engaging in such a practice. However, there are costs associated with vacating a decision that affect both public and private interests.

The most significant cost associated with vacatur is the elimination of the judgment's preclusive effect. However, such concerns are not as compelling in this case because the likelihood of relitigation of the same claims between the parties is virtually nonexistent because of the settlement agreement. Thus, the doctrine of res judicata is not implicated. Furthermore, issue preclusion under the collateral estoppel doctrine is also not a concern between the parties due to the settlement. And as to collateral estoppel with respect to third-party claims, the Court notes that there are no third-party interests present in this case and are not expected, due to the six month statute of limitations applicable to claims brought under the Railway Labor Act. *See IAM v. Aloha Airlines,* 790 F.2d 727 (9th Cir.), *cert. denied,* 479 U.S. 931, 107 S.Ct. 400, 93 L.Ed.2d 354 (1986).

One additional cost associated with vacatur is the dissipated precedential value of the vacated decision. However, the decision and judgment are only being vacated to the extent that punitive damages were awarded against Defendants. Thus, the published decision will retain its precedential value as to all other issues resolved in the Court's decision.

IT IS THEREFORE ORDERED THAT Defendant's Motion for Leave to File a Reply (# 402) is granted.

IT IS FURTHER ORDERED THAT Plaintiffs' and Defendants' Joint Motion to Vacate (# 380A) is granted to the limited extent that the portion of the Court's decision and judgment, as reported in *Schlang v. Key Airlines, Inc.,* 794 F.Supp. 1493 (D.Nev. 1992), which awards punitive damages to Plaintiffs is hereby vacated.

IT IS FURTHER ORDERED THAT the Motion to Perfect Attorney's Lien (# 382) is denied.

IT IS FURTHER ORDERED THAT the Motion for Attorney's Fees and Expenses (# 374) is denied.