129 Nev., Advance Opinion 50

IN THE SUPREME COURT OF THE STATE OF NEVADA

| | |
|---|---|
| AUDIE G. LEVENTHAL,<br>Appellant,<br>vs.<br>BLACK & LOBELLO,<br>Respondent. | No. 58055 |
| AUDIE G. LEVENTHAL,<br>Appellant,<br>vs.<br>BLACK & LOBELLO,<br>Respondent. | No. 59671<br><br>FILED<br><br>JUL 11 2013 |

Consolidated appeals from an award of attorney fees on a charging lien and from a post-judgment order denying NRCP 60(b) relief. Eighth Judicial District Court, Family Court Division, Clark County; Robert Teuton, Judge.

*Reversed.*

Robinson & Wood and Keith D. Kaufman, Las Vegas,
for Appellant.

Black & LoBello and Michele Touby LoBello, Las Vegas,
for Respondent.

BEFORE PICKERING, C.J., HARDESTY and SAITTA, JJ.

*OPINION*

By the Court, PICKERING, C.J.:

This is an appeal from an order adjudicating a law firm's charging lien for fees against its former client under NRS 18.015. The

13-20254

firm did not serve the statutory notices required to perfect its lien until the case was over. Under NRS 18.015(3), a charging lien only attaches to a "verdict, judgment or decree entered and to . . . money or property which is recovered on account of the suit or other action, *from the time of service of the notices required by this section.*" (Emphasis added.) Since the decree became final months before the lien was perfected—and no prospect of post-perfection recovery appeared—the lien should not have been adjudicated under NRS 18.015(4).

## I.

After his wife, Jacqueline, sued appellant Audie Leventhal for divorce, he hired respondent Black & LoBello (LoBello) to represent him. Leventhal's answer to Jacqueline's complaint included a counterclaim seeking to enforce a prenuptial agreement that protected his separate property. In May 2010, a final decree of divorce was entered based on a stipulated marital settlement agreement. Under the stipulated decree, Leventhal retained most of his separate property and was awarded joint custody of his son.

Some months later, Jacqueline and Leventhal returned to court with a post-decree dispute over child custody. Still representing Leventhal, LoBello argued that the post-decree proceeding was so far removed from the original divorce proceeding that it was "really a new action initiated by Jacqueline's most recent Motion." In January 2011, Leventhal and Jacqueline managed to resolve their custodial differences by stipulation. From what appears in the record, the post-decree dispute centered on child custody; its stipulated resolution left Leventhal with joint custody and did not produce any new recovery of money or property.

Leventhal paid LoBello for the firm's work through entry of the final decree. He did not pay LoBello, though, for the fees charged to

litigate the post-decree dispute. Eventually, LoBello filed a motion to withdraw as counsel, along with a notice of, and a motion to adjudicate and enforce, a charging lien for unpaid attorney fees. By then, the divorce decree had been final for months, the decree's property-distribution terms had been implemented, and even the post-decree child-custody dispute had been resolved by filed stipulation. As LoBello later acknowledged, with the case effectively over, "[o]bviously, [Leventhal] could not recover anything further."

Even so, the district court granted LoBello's post-decree motion to adjudicate and enforce a charging lien. It entered personal judgment for LoBello and against Leventhal for $89,852.69. Leventhal appeals, and we reverse.[1]

## II.

## A.

Nevada attorneys have all the usual tools available to creditors to recover payment of their fees. For example, a law firm can sue its client and obtain a money judgment for fees due, thereby acquiring, if recorded, a judgment lien against the client's property. NRS 17.150(2). An attorney also has a passive or retaining lien against files or property held by the attorney for the client. *See Argentena Consol. Mining Co. v. Jolley Urga Wirth Woodbury & Standish*, 125 Nev. 527, 532, 216 P.3d 779, 782 (2009). Finally, in an appropriate case, an attorney may assert a charging lien against the client's claim or recovery under NRS 18.015. *Id.*;

---

[1]Leventhal also appeals the district court's denial of his later NRCP 60(b) motion to set aside the judgment. Since we conclude that the district court erred in adjudicating the lien, we do not reach the NRCP 60(b) issue.

*see* NRS 18.015(5) ("Collection of attorney's fees by a [charging] lien under this section may be utilized with, after or independently of any other method of collection.").[2]

A charging lien is "a unique method of protecting attorneys." *Sowder v. Sowder*, 977 P.2d 1034, 1037 (N.M. Ct. App. 1999). Such a lien allows an attorney, on motion in the case in which the attorney rendered the services, to obtain and enforce a lien for fees due for services rendered in the case. *See Argentena*, 125 Nev. at 532, 216 P.3d at 782. A charging lien "is not dependent on possession, as in the case of the general or retaining lien. It is based on natural equity—the client should not be allowed to appropriate the whole of the judgment without paying for the services of the attorney who obtained it." 23 *Williston on Contracts* § 62:11 (4th ed. 2002).

The four requirements of NRS 18.015 must be met for a court to adjudicate and enforce a charging lien. *See Schlang v. Key Airlines, Inc.*, 158 F.R.D. 666, 669 (D. Nev. 1994) (indicating that, in Nevada, a charging lien is a creature of statute). First, there must be a "claim, demand or cause of action, . . . which has been placed in the attorney's hands by a client for suit or collection, or upon which a suit or other action has been instituted." NRS 18.015(1); *see Argentena*, 125 Nev. at 534, 216 P.3d at 783 (stating that where the client "did not seek or obtain any affirmative recovery in the underlying action, . . . there [is] no basis for a charging lien"). The lien is in the amount of the agreed-upon fee or, if

[2]The 2013 Legislature amended NRS 18.015. 2013 Nev. Stat., ch. 79, § 1, at ___; S.B. 140, 77th Leg. (Nev. 2013). This appeal is governed by the pre-amendment version of NRS 18.015. *See* NRS 18.015 (2012).

none has been agreed upon, a reasonable amount for the services rendered "on account of the suit, claim, demand or action." NRS 18.015(1).[3] Second, the attorney must perfect the lien by serving "notice in writing, in person or by certified mail, return receipt requested, upon his or her client and upon the party against whom the client has a cause of action, claiming the lien and stating the interest which the attorney has in any cause of action." NRS 18.015(2).[4] Third, the statute sets a timing requirement: Once perfected, the "lien attaches to any verdict, judgment or decree entered and to any money or property which is recovered on account of the suit or other action, from the time of service of the notices required by this section." NRS 18.015(3). Fourth, the attorney must timely file and properly serve a motion to adjudicate the lien. NRS 18.015(4). It is the interpretation of the third requirement that is at issue here. The proper construction of NRS 18.015 is a question of law that we review de novo. *Argentena*, 125 Nev. at 531, 216 P.3d at 782.

## B.

LoBello argues that the favorable outcomes in the property and child custody settlements both present recovery to which the lien could attach and that, alternatively, a lien can attach even where no

---

[3]At the outset of the representation, Leventhal signed LoBello's contract stating that if Leventhal failed to pay LoBello's fees, LoBello would have a lien on all funds recovered through the case and all paperwork produced.

[4]Leventhal disputes the adequacy of LoBello's service of the notice of lien; also, it does not appear LoBello served Jacqueline, as the firm should have under NRS 18.015(2). We do not reach these issues because they are not necessary to our decision.

tangible value is procured. In LoBello's view, *Argentena* incorrectly precludes charging liens in cases that do not produce an affirmative recovery. LoBello further argues that *Argentena* unconstitutionally disfavors attorneys who seek to defend or retain rights rather than procure property. LoBello both misunderstands the nature of charging liens and ignores the attorney's ability to pursue client fees via other means available to creditors.

Fundamentally, NRS 18.015(3) requires a client to assert an affirmative claim to relief, from which some affirmative recovery can result. A charging lien cannot attach to the benefit gained for the client by securing a dismissal; it attaches to "the tangible fruits" of the attorney's services. *Glickman v. Scherer*, 566 So. 2d 574, 575 (Fla. Dist. Ct. App. 1990); *see also Argentena*, 125 Nev. at 534, 216 P.3d at 783-84; *Sowder*, 977 P.2d at 1037. This "fruit" is generally money, property, or other actual proceeds gained by means of the claims asserted for the client in the litigation.[5] *See Glickman*, 566 So. 2d at 575; *see ABA/BNA Lawyers'*

---

[5]*Argentena* acknowledged that a charging lien is historically an in rem proceeding, which requires money or property over which the court has jurisdiction in order to adjudicate a charging lien. To the extent that *Argentena* suggests that in rem jurisdiction gives rise to subject matter jurisdiction, we clarify that they are distinct and both are required in order for a district court to adjudicate a charging lien. Other courts without statutory authorization to adjudicate a charging lien in the client's litigation have nevertheless done so because the court has the inherent power to supervise and regulate attorneys appearing before it, the court is likely already familiar with the relevant facts relating to the attorney's performance and services in the case giving rise to the fee dispute, Restatement (Third) of the Law Governing Lawyers § 42 cmt. b (2000), and it would be a waste of judicial time and resources to require a

*continued on next page . . .*

*Manual on Professional Conduct*, at 41:2114 (2002) (discussing the types of property needed for a charging lien to attach); *see also Mitchell v. Coleman*, 868 So. 2d 639, 642 (Fla. Dist. Ct. App. 2004).

*Argentena* is controlling precedent. There, the parties settled a personal injury action, and all claims against Argentena were dismissed. 125 Nev. at 530, 216 P.3d at 781. Argentena's counsel moved to adjudicate its charging lien, but the only result obtained in that case was that the claims against Argentena were dismissed; Argentena did not assert any counterclaims or obtain an affirmative recovery. *Id.* Although Argentena unquestionably benefited from the dismissal, there was no recovery to which a charging lien could attach. *Id.* at 534, 216 P.3d at 784.

Attempting to distinguish *Argentena*, LoBello argues that Leventhal did obtain an affirmative recovery in the underlying case, namely the property retained in the divorce through the property settlement and the "financial benefits associated with . . . child custody," including tax benefits and value in avoiding increased child support.

As to the child-custody benefits, LoBello fails to identify any tangible recovery derived from the resolution of this issue that is appropriately subject to a charging lien. A child-custody agreement wherein Leventhal retained his share of custody and the associated benefits does not demonstrate any affirmative claim to, or recovery of, money or property. Rather, LoBello preserved Leventhal's previously

---

. . . *continued*

separate proceeding to adjudicate the charging lien. *See Gee v. Crabtree*, 560 P.2d 835, 836 (Colo. 1977).

established joint custody rights against his ex-wife's attempt to revise them. This is similar to *Argentena*, where the attorney's efforts led to the dismissal of the case but did not involve an affirmative claim or recovery.

As to the assets distributed pursuant to the property settlement and divorce decree,[6] a problem arises because the property settlement took place eight months before LoBello filed and made even a colorable attempt at perfecting its lien, *see supra* note 4. NRS 18.015(3) imposes a time requirement on attorneys seeking to perfect, adjudicate and enforce a charging lien: "The lien attaches . . . from the time of service of the notices required by this section." Although we have never expressly interpreted this section, Nevada's federal district court did so in *Schlang v. Key Airlines, Inc.*, 158 F.R.D. 666 (D. Nev. 1994).

In *Schlang*, the parties settled a wrongful termination action and their appeals were dismissed. *Id.* at 667-68. Former counsel filed a charging lien but failed to serve the notice required to perfect the lien until the settlement was consummated. *Id.* at 669-70. The federal court, citing NRS 18.015(3),[7] found that because the attorney did not perfect his lien before the settlement agreement was carried out, "there no longer

---

[6]Although this court has held that a charging lien may not attach to assets that are exempt from creditors under NRS 21.090, *see Bero-Wachs v. Law Office of Logar & Pulver*, 123 Nev. 71, 75, 157 P.3d 704, 706 (2007), we have not addressed whether a division of property in a divorce case is an affirmative recovery to which a lien may attach. In light of our disposition of this case, this question is not fairly presented, and we decline to examine it on a hypothetical basis.

[7]The court quotes NRS 18.015(3) but incorrectly cites to NRS 18.015(2).

existed any proceeds to which the lien could attach."[8] *Id.* at 670. It therefore declined to adjudicate and enforce the lien.

We agree with *Schlang*, and hold that under NRS 18.015(3), the lien attaches to a judgment, verdict, or decree entered, or to money or property recovered, *after* the notice is served. This interpretation harmonizes NRS 18.015(3)'s attachment provisions with NRS 18.015(2)'s requirement that a lien be perfected by proper notice. *See Tonopah Lumber Co. v. Nev. Amusement Co.*, 30 Nev. 445, 455, 97 P. 636, 639 (1908). ("[A] lien can only legally exist when perfected in the manner prescribed by the statute creating it . . . ." (internal quotation omitted)). Thus, if an attorney waits to perfect the lien until judgment has been entered and the proceeds of the judgment have been distributed, the right to the charging lien may be lost. *See Sowder*, 977 P.2d at 1038.

Basic notice and fairness requirements support this interpretation. Nevada attorneys must notify their clients in writing of any interest the attorney has that is adverse to a client. RPC 1.8(a); *In re Singer*, 109 Nev. 1117, 1118, 865 P.2d 315, 315 (1993). Other courts have found that charging liens constitute adverse interests and applied a similar written notice rule. *See Fletcher v. Davis*, 90 P.3d 1216, 1221 (Cal. 2004). NRS 18.015(3) promotes these policies by requiring an attorney to serve notice and perfect a charging lien in a timely manner.

Diligent perfection of the lien under NRS 18.015(3) ensures that the client, the client's opponent in the litigation, and others have notice of the attorney's lien and may conduct the litigation and deal with

---

[8]The *Schlang* court cited *In re Nicholson*, 57 B.R. 672 (D. Nev. 1986) (discussing when an attorney lien attaches to property).

any recovery it produces accordingly. A timely motion to adjudicate and enforce the charging lien under NRS 18.015(4) also enables the court to evaluate the lien while it has jurisdiction over any affirmative recovery, while the attorney's performance is fresh in its mind, and before the judgment is satisfied and the proceeds are distributed. *See Weiland v. Weiland*, 814 So. 2d 1252, 1253 (Fla. Dist. Ct. App. 2002) (holding that notice was untimely where the attorney waited to establish the lien until approximately two months after the case concluded); *Sowder*, 977 P.2d at 1038 (holding that a law firm waived its right to assert its charging lien when it waited several months after the property was distributed to assert its charging lien). *See also Anderson v. Farmers Coop. Elevator Ass'n, Inc.*, 874 F. Supp. 989, 992 (D. Neb. 1995) (quashing the attorney charging lien because notice of the lien was untimely, made after the property had been transferred to the opposing party); *Libner v. Maine Cnty. Comm'rs Ass'n*, 845 A.2d 570, 573 (Me. 2004) (holding that no lien may be imposed without direct and specific notice to the fund of an opposing party or its carriers that a lien is asserted before the proceeds are disbursed). It would be unreasonable and unfair to clients and to third parties to allow attorneys to claim a lien on any judgment at any time, no matter how much time has passed since the case concluded.

Here, LoBello perfected its lien eight months after the stipulated divorce decree was entered and the property was distributed—well after the time a lien could have attached to any of the property governed by that settlement.[9] Moreover, the custody settlement did not

---

[9]*Compare Kramer v. Kramer*, 96 Nev. 759, 762, 616 P.2d 395, 397 (1980) (the court loses jurisdiction over property divided by a divorce

*continued on next page . . .*

SUPREME COURT
OF
NEVADA

(O) 1947A

modify the property distribution in the divorce decree or otherwise bring that property back into dispute. Most importantly, LoBello admits that all outstanding issues were resolved before it filed or tried to perfect the lien, and it did not show that any recovery was still pending resolution or other legal action. *Cf. Fein v. Schwartz*, 404 S.W.2d 210, 227 (Mo. Ct. App. 1966) (holding that where property remained to be transferred after the conclusion of a case, the lien was timely perfected before the transfer of property even though notice was served after the conclusion of the case). By the time LoBello filed and tried to perfect its lien, there was nothing to which the lien could have attached.[10]

This court is not unsympathetic to LoBello's situation. But when an attorney seeks a charging lien—a unique lien enforced by unique methods—the attorney must comply with the particular requirements of the statute. *Cf. Sowder*, 977 P.2d at 1038. If LoBello wishes to pursue its claims through other means, it may do so. However, LoBello may not rely

---

*. . . continued*

decree where the parties wait for longer than six months to modify the decree), *with Collins v. Murphy*, 113 Nev. 1380, 1384-85, 951 P.2d 598, 600-01 (1997) (holding that it was unfairly prejudicial and an error to adjudicate a motion for attorney fees filed after the deadline for filing a notice of appeal had passed), *superseded by rule amendment, In the Matter of Amendments to the Nevada Rules of Civil Procedure*, ADKT No. 426 (Order Amending Nevada Rule of Civil Procedure 54, February 6, 2009).

[10]Even though LoBello's contract stated it would have a lien on any recovery if Leventhal failed to pay fees, at best this evidenced an intent to claim a charging lien if Leventhal defaulted on payment and LoBello gained recovery on Leventhal's behalf. *See Sowder*, 977 P.2d at 1038.

on perfecting and prosecuting a charging lien filed eight months after the final decree is entered, when the case was completely concluded.

Accordingly, we reverse.

_____, C.J.
Pickering

We concur:

_____, J.
Hardesty

_____, J.
Saitta