# IN THE SUPREME COURT OF THE STATE OF NEVADA

VETERANS IN POLITICS
INTERNATIONAL, INC.; AND STEVE
W. SANSON,
Appellants,
vs.
MARSHAL S. WILLICK; AND WILLICK
LAW GROUP,
Respondents.

No. 72778

**FILED**

FEB 21 2020

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY_____
DEPUTY CLERK

## ORDER REVERSING AND REMANDING

This is an appeal from a district court order denying a special motion to dismiss pursuant to NRS 41.660. Eighth Judicial District Court, Clark County; J. Charles Thompson, Senior Judge.

Appellants, Veterans in Politics International, Inc., and Steve Sanson (collectively, Veterans in Politics), published five statements on its webpage and in various social media outlets criticizing respondents, Marshal Willick and Willick Law Group (collectively, Willick). Based on the published statements, Willick filed suit against Veterans in Politics, asserting claims for, *inter alia*, defamation, intentional infliction of emotional distress, negligent infliction of emotional distress, false light, and business disparagement. Veterans in Politics filed a special motion to dismiss Willick's claims pursuant to Nevada's anti-SLAPP (Strategic Litigation Against Public Participation) statute, NRS 41.660.

The district court denied the anti-SLAPP motion, concluding that Veterans in Politics failed to establish by a preponderance of the evidence that the statements it published (1) concerned an issue of public

20-07108

interest, and (2) were truthful or made without knowledge of their falsehood. Veterans in Politics timely appealed.

Because we conclude each challenged statement concerned an issue of public interest, we reverse the district court's order and remand for further proceedings consistent with this order and pursuant to NRS 41.660(3)(b).

*Facts and Procedural History*

Appellant Veterans in Politics is a Nevada non-profit veterans' advocacy organization with a stated purpose of providing information regarding political candidates and issues to military veterans and their families. Appellant Steve Sanson is the organization's president. Respondent Marshal Willick is a Nevada attorney who practices exclusively in the field of domestic relations, and who is a certified Fellow of the American Academy of Matrimonial Lawyers, as well as a certified specialist in family law.

In November of 2015, Willick appeared by invitation on a radio show hosted by Veterans in Politics. Willick participated in the radio interview in order to discuss his views regarding Assembly Bill 140, 78th Leg. (Nev. 2015), legislation pertaining to disallowing the inclusion of veterans' disability benefits when calculating spousal support, and other topics related to veterans and family law. Willick opposed the legislation while Veterans in Politics supported its passage, and this created dissension between Willick and Veterans in Politics. Between December of 2016 and January of 2017, Veterans in Politics published, on its website and on various social media platforms, five statements at issue in this appeal, each critical of Willick. The five statements appeared online as follows:

[Statement 1] "This is the type of hypocrisy we have in our community. People that claim to be for veterans but yet they screw us for profit and power." [Statement 1 included a link that redirected to audio content of Willick's November 2015 radio interview.]

. . . .

[Statement 2] "Attorney Marshall [sic] Willick and his pal convicted of sexually [sic] coercion of a minor Richard Crane was found guilty of defaming a law student in a United States District Court Western District of Virginia signed by US District Judge Norman K. Moon." [Statement 2 included a link to news articles regarding Crane's conviction of sexually motivated coercion of a minor, this court's order suspending Crane from the practice of law, and an order from the United States District Court for the Western District of Virginia granting summary judgment against Willick and Crane, in part, as defendants in a defamation action.]

. . . .

[Statement 3] "Would you have a Family Attorney handle your child custody case if you knew a sex offender works in the same office? Welcome to The Willick Law Group." [Statement 3 included a link to an online review site discussing Crane's legal services, this court's order denying Crane's request for reinstatement to the practice of law, and an article authored by Willick and Crane stating that Crane was, at the time the article was published, an attorney in Willick's firm.]

. . . .

[Statement 4] "Nevada Attorney Marshall [sic] Willick gets the Nevada Supreme Court [d]ecision . . . . From looking at all these papers it's obvious that Willick scammed his client, and later scammed the court by misrepresenting that he was entitled to recover property under his lien and

reduce it to judgement [sic] . . . . He did not recover anything. The property was distributed in the Decree of Divorce. Willick tried to get his client to start getting retirement benefits faster. It was not with [sic] 100,000 [sic] in legal bills. Then he pressured his client into allowing him to continue with the appeal." [Statement 4 included a link redirecting to this court's opinion in *Leventhal v. Black & Lobello*, 129 Nev. 472, 305 P.3d 907 (2013), discussing the adjudication of an attorney's charging lien.]

. . . .

[Statement 5] "Attorney Marshall [sic] Willick loses his appeal to the Nevada Supreme Court." [Statement 5 included a link to this court's disposition of *Holyoak v. Holyoak*, Docket No. 67490 (Order of Affirmance, May 12, 2016), a case in which Willick represented the respondent, for whom this court affirmed a distribution of community property.]

Willick filed suit against Veterans in Politics based upon these five statements, which Veterans in Politics admittedly posted online. Veterans in Politics then filed a special motion to dismiss under Nevada's anti-SLAPP statute. The district court rejected the motion, concluding, *inter alia*, that Veterans in Politics failed to establish by a preponderance of the evidence that the statements (1) concerned an issue of public interest, and (2) were truthful or made without knowledge of their falsehood. This timely appeal follows.

*Discussion*

Pursuant to NRS 41.660(1), Nevada's anti-SLAPP statute, a defendant may file a special motion to dismiss a complaint if the complaint is based on the defendant's "good faith communication in furtherance of the right to petition or the right to free speech in direct connection with an issue

SUPREME COURT
OF
NEVADA

(O) 1947A

of public concern." NRS 41.637 identifies four types of communication that constitute a "[g]ood faith communication in furtherance of the right to petition or the right to free speech in direct connection with an issue of public concern," one of which includes a "[c]ommunication made in direct connection with an issue of public interest in a place open to the public or in a public forum." NRS 41.637(4). In *Shapiro v. Welt*, 133 Nev. 35, 39-40, 389 P.3d 262, 268 (2017), we explained that to determine whether an issue is one of public interest pursuant to NRS 41.637(4), the district court must evaluate the issue using the following guiding principles:

> "(1) 'public interest' does not equate with mere curiosity;
>
> (2) a matter of public interest should be something of concern to a substantial number of people; a matter of concern to a speaker and a relatively small specific audience is not a matter of public interest;
>
> (3) there should be some degree of closeness between the challenged statements and the asserted public interest–the assertion of a broad and amorphous public interest is not sufficient;
>
> (4) the focus of the speaker's conduct should be the public interest rather than a mere effort to gather ammunition for another round of private controversy; and
>
> (5) a person cannot turn otherwise private information into a matter of public interest simply by communicating it to a large number of people."

*Id.* (quoting *Piping Rock Partners, Inc. v. David Lerner Assocs., Inc.*, 946 F. Supp. 2d 957, 968 (N.D. Cal. 2013), *aff'd*, 609 Fed. Appx. 497 (9th Cir. 2015)); *see also Coker v. Sassone*, 135 Nev. 8, 13, 432 P.3d 746, 750-51 (2019).

"[A] moving party seeking protection under NRS 41.660 need only demonstrate [by a preponderance of evidence] that his or her conduct falls within one of [NRS 41.637's] four . . . defined categories of speech," *Coker*, 135 Nev., Adv. Op. 2, 432 P.3d at 749 (citing *Delucchi v. Songer*, 133 Nev. 290, 299, 396 P.3d 826, 833 (2017)), and that the statement is made truthfully or without knowledge of its falsehood. "If a defendant makes this initial showing, the burden shifts to the plaintiff to show with prima facie evidence a probability of prevailing on the claim. NRS 41.660(3)(b)." *Shapiro*, 133 Nev. at 38, 389 P.3d at 267 (footnote omitted) (internal quotation marks omitted). Here, the district court denied Veterans in Politics' anti-SLAPP motion at the first step of the analysis, finding that Veterans in Politics failed to show its communication involved an issue of public interest and failed to establish that each statement was truthful or made without knowledge of its falsehood.[1] Because the district court's order

---

[1]The district court also based its denial of Veterans in Politics' anti-SLAPP motion partly on the court's finding that Willick is not a public figure or limited public figure. Whether a plaintiff is a public figure or a limited-purpose public figure is a question of law that this court reviews de novo. *Bongiovi v. Sullivan*, 122 Nev. 556, 572, 138 P.3d 433, 445 (2006). Whether Willick qualifies as a public figure relates to the merits of Willick's defamation claim. *Id.* ("Once the plaintiff is deemed a limited-purpose public figure, the plaintiff bears the burden of proving that the defamatory statement was made with actual malice, rather than mere negligence."). Accordingly, the district court's conclusion as to Willick's status is relevant under the *second* step of an anti-SLAPP motion to dismiss, after the burden shifts from the defendant to the plaintiff, who must then show a probability of prevailing on the claim. We are concerned here only with the first step of analysis, and need not examine the district court's public figure determination.

implicates only the first of two steps of anti-SLAPP analysis, our discussion here is limited to that narrow question of law, which we review de novo. *Coker*, 135 Nev. at 10, 432 P.3d at 749.

Veterans in Politics argues each statement addressed in this appeal concerns an issue of public interest, and that each was made truthfully or without knowledge of the statement's falsehood. We examine each statement in turn, analyzing whether each concerned an issue of public interest according to the guiding principles articulated in *Shapiro*. 133 Nev. at 39-40, 389 P.3d at 268.

Statement 1 read: "This is the type of hypocrisy we have in our community. People that claim to be for veterans but yet they screw us for profit and power." The parties do not dispute that this statement referred to Willick's November 2015 radio interview, in which he discussed A.B. 140, which took effect a little over one month prior to the radio interview, and which concerned military veterans' disability benefits. Willick voluntarily participated in the radio interview by invitation from Veterans in Politics. Earlier that year, Willick testified in opposition to the legislation when it was considered by the Nevada Assembly Committee on the Judiciary. Sanson, representing Veterans in Politics, testified in favor of the legislation during the same committee hearing. As a statement in reference to a publicly broadcast radio interview, conducted for the purpose of discussing the parties' divergent opinions on legislation that was publicly considered during committee hearings and adopted by the Nevada Legislature, we think it quite clear that Statement 1 involved a topic of public concern, rather than a topic of private concern about which the public may have been merely curious. Thus, the first *Shapiro* principle weighs in

favor of designating Statement 1 as a communication involving an issue of public interest.

Statement 1 also concerned a substantial number of people, as it referred to a radio interview conducted for the purpose of discussing legislation affecting Nevada military veterans receiving disability benefits, and their spouses. At a minimum, A.B. 140 directly affected any military veteran in Nevada receiving federal disability benefits at the time of divorce, as well as the spouse of such an individual. The legislation unquestionably concerned a substantial number of people, and Statement 1 was an extension of a publicly broadcast discussion about that legislation.

Moreover, because Willick participated in the radio interview specifically to discuss his opposition to A.B. 140, we identify a sufficient closeness between Statement 1 and a public interest. Further, because Statement 1 indicates a point of view opposing Willick's position on A.B. 140, we conclude Statement 1 focuses on an issue of public interest, rather than merely an effort to advance a private controversy between Veterans in Politics and Willick. Finally, we cannot conclude that a publicly broadcast radio interview, conducted to discuss legislation about which both parties voluntarily and publicly testified, involved otherwise private information. Accordingly, we conclude that Statement 1 satisfies each of the five *Shapiro* factors and qualifies as a communication in direct connection with an issue of public interest. The district court erred in concluding otherwise.

To prevail on its anti-SLAPP motion as to Statement 1, Veterans in Politics must also demonstrate by a preponderance of evidence that Statement 1 was "truthful or [ ] made without knowledge of its falsehood." NRS 41.637; *Shapiro*, 133 Nev. at 40, 389 P.3d at 268. Generally, a statement of opinion cannot be labeled as "true" or "false," as

SUPREME COURT
OF
NEVADA

(O) 1947A

8

this court observed in *Pegasus v. Reno Newspapers, Inc.*, 118 Nev. 706, 714, 57 P.3d 82, 87 (2002). Here, Statement 1 reflects the opinion that a person, presumably Willick, who opposed A.B. 140 but claims to support veterans, is a hypocrite who is actually not concerned with veterans' well-being. "'However pernicious [this] opinion may seem, we depend for its correction not on the conscience of judges and juries but on the competition of other ideas.'" *Id.* (quoting *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 339-40 (1974)). Sanson's affidavit in support of Veterans in Politics' anti-SLAPP motion to dismiss claims that Statement 1 "reflected [Sanson's] opinion of Willick's views on Assembly Bill 140 that dealt with keeping veteran disability pay from being taken into account in calculating spousal support payments." Because an opinion critical of Willick's, or any other person's, views on legislation, cannot be labeled as "true" or "false," we conclude Veterans in Politics met its burden of showing that Statement 1 was made "without knowledge of its falsehood."

Next, we apply the *Shapiro* factors to Statement 2, which read: "Attorney Marshall [sic] Willick and his pal convicted of sexually [sic] coercion of a minor Richard Crane was found guilty of defaming a law student in a United States District Court Western District of Virginia signed by US District Judge Norman K. Moon." In its initial version, Statement 2's grammatical deficiencies arguably implied that Willick was, along with "his pal," convicted of a sex-related crime. Veterans in Politics asserts, however, that the omission of two commas from the original version

of the statement was inadvertent.[2] As we discuss further below, Statement 2's hyperlink to official judicial proceedings involving only Crane allowed the average reader to readily discern that Statement 2's allusion to sexual misconduct referred to Crane, not to Willick. Given its hyperlink to source material relating to official judicial proceedings, we conclude Statement 2, in both its original wording and as revised, qualified as a communication in direct connection with an issue of public interest.

Statement 2 concerned a defamation suit against Willick and Crane, Crane's conviction of criminal sexual misconduct, and Crane's subsequent suspension from the practice of law in Nevada. The statement, then, is a communication concerning matters of public concern because the statement relates entirely to judicial proceedings about which the public clearly has a right to know. As a general matter, this court has repeatedly "'affirm[ed] the policy that Nevada citizens have a right to know what transpires in public and official legal proceedings.'" *Adelson v. Harris*, 133 Nev. 512, 515, 402 P.3d 665, 667 (2017) (*quoting Lubin v. Kunin*, 117 Nev. 107, 114, 17 P.3d 422, 427 (2001)). In light of this public policy, we conclude Statement 2 concerns a matter of public interest, rather than a matter about which certain members of the public may be merely curious, to the extent it relates to public judicial proceedings and communicates information to the public regarding official matters about which the public has a right to know. To conclude otherwise would unduly risk undermining

---

[2]The record indicates Veterans in Politics subsequently issued a corrected version of Statement 2, with commas included, and also issued a separate clarification explaining that Crane, not Willick, was convicted of a crime involving sexual misconduct.

a policy that favors the dissemination of information to the public about their judicial system.

More specifically, the individual cases to which Statement 2 referred both involve issues that are of particular interest to the public. Crane's 2010 felony conviction for sexual misconduct resulted in his registration as a sex offender and his suspension from the practice of law, which various local media outlets reported on in articles about the subject. Sex offender registration requirements inherently reflect the public's interest in "notification based on an assessment of the sex offender's risk of committing future crimes," and are "designed to reach members of the public who are likely to encounter the sex offender." *Nollette v. State*, 118 Nev. 341, 345-46, 46 P.3d 87, 90 (2002). Furthermore, this court's regulation of the legal profession, particularly the discipline of attorneys for misconduct, is informed by a primary concern for the public interest, "both protect[ing] the public from incompetent legal services and also ensuring that regulation of the practice of law is not so strict that the public good suffers." *In re Discipline of Lerner*, 124 Nev. 1232, 1241, 197 P.3d 1067, 1073 (2008). Statement 2's references regarding Crane do not simply assert a "broad and amorphous public interest," but instead focus directly on issues of unquestionable public concern.

The reference in Statement 2 concerning the 2008 defamation suit against Willick and Crane also implicates an issue of public concern. The United States District Court for the District of Virginia in the 2008 defamation suit concluded the underlying statements at issue were republications purportedly representing the findings of a federal district court in Nevada, and as such, potentially qualified for a public record privilege under Virginia law. Statement 2 included a hyperlink to the

SUPREME COURT
OF
NEVADA

(O) 1947A

federal court's order in the 2008 defamation suit, which discussed the action's connections to Nevada and the underlying statement's eligibility for privilege as a publication of a record of a Nevada judicial proceeding. The record further confirms that the 2008 defamation suit was part of a broader dispute with direct connection to Nevada generally, and to Willick and Crane in particular. Thus, Statement 2's reference to a lawsuit based on republications of a Nevada judicial proceeding also involved a matter of public concern.

Applying the *Shapiro* factors, we conclude Statement 2 is a communication in direct connection with an issue of public interest. Statement 2 directly relates to official judicial proceedings about which the public generally has a legitimate right to know, rather than issues merely piquing public curiosity. Specifically, the subject matter implicated by the legal actions which Statement 2 references are of particular interest to the public at large, rather than a relatively small, specific audience. Finally, because Statement 2 linked to publically available court filings and media reports indisputably a part of the public record, the statement did not attempt to turn otherwise private information into an issue of public concern.

Having determined that Statement 2 qualifies as a communication made in direct connection with an issue of public interest, we must also address whether Veterans in Politics showed by a preponderance of evidence that Statement 2 was "truthful or [ ] made without knowledge of its falsehood." *Shapiro*, 133 Nev. at 40, 389 P.3d at 268. We conclude Veterans in Politics met its burden. The record indicates that Statement 2 included hyperlinks to the federal district court's order in the 2008 defamation case, to media reports and news articles regarding

Crane's felony conviction, and to this court's order suspending Crane from the practice of law. "The hyperlink . . . has become a well-recognized means for an author [on] the Internet to attribute a source and . . . instantaneously permits the reader to verify an electronic article's claims." *Adelson*, 133 Nev. at 517, 402 P.3d at 669 (internal quotation marks omitted). Here, Veterans in Politics linked Statement 2 to documents published in the course of official judicial proceedings and to media reports directly related to those proceedings. The hyperlinks allowed an average reader to evaluate the extent to which Statement 2 related to those public proceedings. By including hyperlinks from which an average reader could readily discern that Statement 2 summarized official documents and legal proceedings, and verify the statement based on sources included therewith, Veterans in Politics met its burden of showing Statement 2 was made truthfully or without knowledge of its falsehood.

We turn next to Statement 3, which read: "Would you have a Family Attorney handle your child custody case if you knew a sex offender works in the same office? Welcome to The Willick Law Group." Statement 3 is akin to a consumer review of legal services offered by a prominent Nevada law firm, and as such, is more readily identifiable as a communication in direct connection with an issue of public interest.

Veterans in Politics included with Statement 3 a link to an online consumer review page which, ironically, expressed a favorable assessment of Crane's legal services, and Crane in particular, describing him as "a great listener" who achieved "a very positive outcome" in the case. The review included with Statement 3 also described Willick's firm as "highly respected," and the outcome of the firm's representation as "very positive." Veterans in Politics apparently linked to the otherwise favorable

review in order to show that Crane still worked at the firm, despite his previous suspension from the practice of law for sexual misconduct. Although perhaps less obviously than the subject matter of Statement 1, which concerned a public discussion of legislation dealing with veterans' disability benefits, Statement 3's conveyance of information to potential clients regarding the prior misconduct of an attorney implicates more than mere curiosity of members of the public, and instead relates directly to an issue of public interest. *See Wilbanks v. Wolk*, 17 Cal. Rptr. 3d, 497, 507-08 (2004) (explaining that statements issued as a warning not to use a professional's services directly connected to an issue of public concern where the information provided was in the nature of consumer protection information).

The focus of Statement 3 is on providing this information to potential clients and involved information indisputably in the public record, specifically, this court's order denying Crane's request for reinstatement and an online article jointly published by Willick and Crane. Thus, we conclude the first, third, fourth, and fifth *Shapiro* factors weigh in favor of Statement 3's designation as a communication in direct connection with an issue of public interest. The district court erred in concluding otherwise.

Because we are persuaded that Statement 3 is a communication in the nature of a consumer review, we also conclude the statement is inherently a statement of opinion that, like Statement 1, cannot be labeled as "true" or "false." *See Pegasus v. Reno Newspapers, Inc.*, 118 Nev. 706, 714, 57 P.3d 82, 87-88 (2002) ("A review, by its very nature, constitutes the opinion of the reviewer."). Accordingly, we conclude Veterans in Politics met its burden of showing that Statement 3 was made "without knowledge of its falsehood."

Statement 4, like Statement 2, concerned a particular case that Willick was involved in, namely, *Holyoak v. Holyoak*, Docket No. 67490 (Order of Affirmance, May 19, 2016), where Willick represented the respondent in a domestic relations matter. Unlike Statement 2, however, which focused on issues of unquestionable public concern, Statement 4 presents a closer question in that it conveys Sanson's criticism personally targeting Willick regarding his performance as an attorney in a relatively private dispute. In this regard, Statement 4 appears to reflect, at least in part, Sanson's effort to gather ammunition for another round of private controversy. Nevertheless, considering all of the *Shapiro* factors, we conclude that Statement 4 also qualifies as a communication made in direct connection with an issue of public interest.

Statement 4 included a hyperlink to the decision of this court in *Leventhal v. Black & LoBello*, 129 Nev. 472, 305 P.3d 907 (2013), an opinion generally concerned with the issue of attorney fee eligibility. By following the hyperlink, the average reader could reasonably connect Statement 4's criticism of Willick with the legal issue of attorney fee eligibility, a topic that implicates public policy concerns of interest to the public generally, rather than merely to a small audience. *See generally Miller v. Wilfong*, 121 Nev. 619, 622-23, 119 P.3d 727, 730 (2005) (affirming an attorney fee award to pro bono counsel in a child custody action and discussing generally the public policy rationales underpinning attorney fee awards in various contexts).

Further, Sanson asserted in his anti-SLAPP motion that Statement 4 was meant to express his opinion that Willick "should not have been able to get the amount of fees he asked for." Like Statement 2, Statement 4 amounts to commentary about official legal proceedings, which

SUPREME COURT
OF
NEVADA

(O) 1947A

15

an average reader could conclude related to a published opinion of this court. The commentary specifically concerned public proceedings in the *Holyoak* matter with which Willick was directly involved. As such, the statement informed the public about an important issue pertaining to an aspect of the judicial system, while allowing the average reader to evaluate the statement's criticism vis-à-vis Willick against publically available source material. Statement 4 did not attempt to convert otherwise private material into a public matter, and there is sufficient closeness between the criticism of Willick's fee eligibility and the general public issue of attorney fees, as discussed by this court in *Leventhal*.

We acknowledge the hostile and acrimonious undertones of Statement 4 and the acrimonious relationship it indicates exists between the parties. However, Willick is entitled, under the second prong of an anti-SLAPP analysis, to an opportunity to show a probability of prevailing on the elements of his claims involving evidence of intent or ill will.

Finally, we examine Statement 5, which read, simply: "Attorney Marshall [sic] Willick loses his appeal to the Nevada Supreme Court," with a link redirecting to this court's Order of Affirmance in *Holyoak*. We, like California courts, "define an issue of public interest broadly." *Coker v. Sassone*, 135 Nev. 8, 14, 432 P.3d 746, 751 (2019). Unlike Statement 4, which personally and disparagingly targeted Willick in a manner critical of his character and competence as a professional, Statement 5 is a rather generic, impersonal statement about the outcome of a case on appeal. That an attorney loses a case on appeal is not an inherently adverse reflection of the attorney's professional competence or personal character; even the best and the brightest, at times, come up short in their efforts on appeal. Thus, we see no need to apply each *Shapiro* factor

to Statement 5 to conclude that a generic statement regarding the outcome of an appeal to this court qualifies as a communication concerning a matter of public interest.

Although Statement 5 is factually inaccurate to the extent Willick's client substantially prevailed in *Holyoak*, Veterans in Politics included with Statement 5 a hyperlink to the *Holyoak* order in which this court rejected certain aspects of Willick's legal argument. *See Holyoak*, Docket No. 67490, at 3 n.2. The hyperlink, as with Statement 2, enabled the average reader to verify the veracity of Statement 5's claims that Willick lost on appeal. Accordingly, we conclude Veterans in Politics offered sufficient evidence that Statement 5 was made without knowledge of its falsehood.

It is important to emphasize that, while Veterans in Politics met its initial burden as to the first step of the anti-SLAPP analysis with regard to each statement, the district court's analysis does not end there. As the plaintiff in the underlying defamation action, Willick must be given the opportunity to show, with prima facie evidence, a probability of prevailing on his claims as to each statement. NRS 41.660(3)(b); *Shapiro*, 133 Nev. at 38, 389 P.3d at 262. We are careful to express no impression as to Willick's likelihood of success in the next phase of the underlying action, as the district court did not venture that far and the issue is not before us here.

We conclude that Veterans in Politics showed, by a preponderance of evidence, that each statement was a communication made in direct connection with an issue of public interest, and met the initial threshold required to invoke anti-SLAPP protection.

Supreme Court
of
Nevada

(O) 1947A

We REVERSE the district court's order denying the anti-SLAPP motion to dismiss, and REMAND for further proceedings consistent with this order and pursuant to NRS 41.660(3)(b).[3]

_____, C.J.
Pickering

_____, J.
Gibbons

_____, J.
Hardesty

_____, J.
Parraguirre

_____, J.
Stiglich

cc:  Chief Judge, Eighth Judicial District Court
Hon. J. Charles Thompson, Senior Judge
Ara H. Shirinian, Settlement Judge
Anat Levy & Associates, P.C.
The Abrams & Mayo Law Firm
Randazza Legal Group, PLLC
Eighth District Court Clerk

---

[3]The Honorable Elissa Cadish, Justice, and the Honorable Abbi Silver, Justice, voluntarily recused themselves from participation in the decision of this matter.