137 Nev., Advance Opinion 43

IN THE SUPREME COURT OF THE STATE OF NEVADA

SUPERPUMPER, INC., AN ARIZONA CORPORATION; EDWARD BAYUK, INDIVIDUALLY AND AS TRUSTEE OF THE EDWARD WILLIAM BAYUK LIVING TRUST; SALVATORE MORABITO, AN INDIVIDUAL; AND SNOWSHOE PETROLEUM, INC., A NEW YORK CORPORATION,
Appellants,
vs.
WILLIAM A. LEONARD, TRUSTEE FOR THE BANKRUPTCY ESTATE OF PAUL ANTHONY MORABITO,
Respondent.

No. 79355

FILED

SEP 16 2021

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY_____
CHIEF DEPUTY CLERK

Appeal from a final judgment and order awarding attorney fees and costs in a tort action. Second Judicial District Court, Washoe County; Connie J. Steinheimer, Judge, and Janet Berry, Senior Judge.

*Affirmed.*

Claggett & Sykes Law Firm and Micah S. Echols, Las Vegas; Hartman & Hartman and Jeffrey L. Hartman, Reno; Robison, Sharp, Sullivan & Brust and Frank C. Gilmore, Reno,
for Appellants.

Garman Turner Gordon and Gerald M. Gordon, Gabrielle A. Hamm, Erika A. Pike Turner, and Teresa M. Pilatowicz, Las Vegas; Jones Lovelock and Stephen A. Davis, Las Vegas,
for Respondent.

BEFORE THE SUPREME COURT, EN BANC.

21-26856

*OPINION*

By the Court, HARDESTY, C.J.:

In this appeal, we examine whether a state district court had subject matter jurisdiction over a fraudulent conveyance action or whether such an action is within the exclusive jurisdiction of the federal bankruptcy court. We hold that the district court here had subject matter jurisdiction over the action because there is concurrent federal and state jurisdiction over fraudulent conveyance actions. We also conclude that, unlike subject matter jurisdiction, a defect as to in rem jurisdiction is a defect that is waived if not timely asserted. Accordingly, because the district court properly exercised jurisdiction over the action and did not abuse its discretion in its rulings on the discovery and evidentiary issues discussed below, we affirm the district court's judgment.

*FACTS AND PROCEDURAL HISTORY*

In 2007, Paul Morabito and Consolidated Nevada Corporation (CNC) filed a lawsuit against JH, Inc., Jerry Herbst, and Berry-Hinckley Industries (collectively, the Herbsts). The Herbsts filed counterclaims against Morabito and CNC and ultimately prevailed. The Herbsts were awarded in excess of $149.4 million in damages. Thereafter, the parties entered into a settlement agreement for $85 million. By that time, Morabito had already moved most of his assets out of his name. Morabito and CNC defaulted on the settlement agreement, and, as a result, the Herbsts filed an involuntary Chapter 7 bankruptcy petition against Morabito and CNC. The bankruptcy court adjudicated Morabito as a Chapter 7 debtor.

In an attempt to collect on the settlement agreement, the Herbsts filed a fraudulent transfer action under NRS Chapter 112 against Morabito, as well as the transferees of his assets, in state district court. The

SUPREME COURT
OF
NEVADA

(O) 1947A

transferees (appellants in this case) are Superpumper, Inc., an Arizona corporation; Salvatore (Sam) Morabito, who is Paul Morabito's brother; Edward Bayuk, individually and as trustee of the Bayuk Trust; and Snowshoe Petroleum, Inc., a New York corporation (collectively, when possible, Superpumper). All of the transferees received substantial assets from Morabito.

After the bankruptcy court appointed respondent William A. Leonard as Morabito's bankruptcy trustee (the Trustee), the Herbsts and Superpumper stipulated to substitute the Trustee for the Herbsts and to remove Morabito as a defendant in the state court action. Following an eight-day bench trial, the state district court avoided all of Morabito's transfers to Superpumper and awarded the Trustee the subject property or the value thereof.

Superpumper appeals, arguing that the district court (1) did not have subject matter jurisdiction over the underlying fraudulent conveyance action, (2) did not have in rem jurisdiction over the Bayuk Trust, and (3) erred in allowing attorney-client communications to be disclosed during discovery and admitted into evidence at trial.

## DISCUSSION

*The district court had subject matter jurisdiction over the fraudulent conveyance action*

Superpumper's argument regarding subject matter jurisdiction is twofold. First, Superpumper asserts that the state district court did not have jurisdiction over the entire case because fraudulent transfer proceedings are within the exclusive jurisdiction of the bankruptcy court. Specifically, citing *In re Gruntz*, 202 F.3d 1074, 1080-81 (9th Cir. 2000), Superpumper argues that bankruptcy courts have exclusive jurisdiction over "core proceedings" and that a fraudulent conveyance action is a core

proceeding. Second, Superpumper contends that the Trustee lacked standing to maintain the underlying action.

"Subject matter jurisdiction is a question of law subject to de novo review." *Ogawa v. Ogawa*, 125 Nev. 660, 667, 221 P.3d 699, 704 (2009). Subject matter jurisdiction "can be raised by the parties at any time, or sua sponte by a court of review, and cannot be conferred by the parties." *Landreth v. Malik*, 127 Nev. 175, 179, 251 P.3d 163, 166 (2011) (internal quotation marks omitted). "[I]f the district court lacks subject matter jurisdiction, the judgment is rendered void." *Id.*

Federal district courts "have original and exclusive jurisdiction of all cases under title 11," which encompasses the federal bankruptcy provisions. 28 U.S.C. § 1334(a) (2005). However, "the district courts shall have *original but not exclusive jurisdiction* of all civil proceedings arising under title 11, or arising in or related to cases under title 11." *Id.* at § 1334(b) (emphasis added). Federal district courts may refer all cases arising under title 11 to bankruptcy judges. 28 U.S.C. § 157(a). And "[b]ankruptcy judges *may* hear and determine all cases under title 11 and all *core proceedings* arising under title 11." *Id.* at § 157(b)(1) (emphases added). "[A] 'core proceeding' in bankruptcy is one that invokes a substantive right provided by title 11 or . . . a proceeding that, by its nature, could arise only in the context of a bankruptcy case." *Gruntz*, 202 F.3d at 1081 (internal quotation marks omitted). In contrast, "'[n]on-core proceedings' are those not integral to the restructuring of debtor-creditor relations and not involving a cause of action arising under title 11." *Id.*

Although Superpumper suggests otherwise, just because a proceeding is considered "core" does not mean that it lies within the exclusive jurisdiction of the bankruptcy court. Rather, whether a

proceeding is considered "core" determines the relationship between Article I bankruptcy courts and Article III federal district courts, not state courts. In *Executive Benefits Insurance Agency v. Arkison*, the United States Supreme Court explained that bankruptcy courts are authorized to enter final judgments in core proceedings, which the federal district court may then review "under traditional appellate standards." 573 U.S. 25, 33-34 (2014). However, "for 'non-core' proceedings . . . [,] a bankruptcy court" is merely authorized to "'submit proposed findings of fact and conclusions of law to the district court' [which] must then review those proposed findings and conclusions *de novo* and enter any final orders or judgments." *Id.* at 34 (quoting 28 U.S.C. § 157(c)(1)).

Thus, whether a matter is "core" or "non-core" determines whether the bankruptcy court may enter a final judgment and the appropriate standard of review for that judgment, not whether a state court has jurisdiction over the matter. *See Gruntz*, 202 F.3d at 1081 ("[T]he separation of 'core' and 'non-core' proceedings . . . creates a distinction between those judicial acts deriving from the plenary Article I bankruptcy power and those subject to general Article III federal court jurisdiction."); *Hopkins v. Plant Insulation Co.*, 349 B.R. 805, 811 (Bankr. N.D. Cal. 2006) (stating that "[28 U.S.C. §] 157(b) governs the division of responsibility between Article III district courts and Article I bankruptcy courts in each judicial district, and has nothing to say about the division of responsibility between state and federal courts").

Instead, as the Bankruptcy Appellate Panel of the Ninth Circuit noted in *In re McCarthy*, state and federal courts share concurrent jurisdiction over certain "core" proceedings. 230 B.R. 414, 418 (B.A.P. 9th Cir. 1999) ("The fact that a fraudulent transfer action might be a 'core

SUPREME COURT
OF
NEVADA

(O) 1947A

5

proceeding' under 28 U.S.C. § 157(b)(2) does not equate to exclusive federal jurisdiction. Rather, there is concurrent federal and state jurisdiction over fraudulent transfer actions and many other core proceedings." (citing 28 U.S.C. § 1334(b))); *see also In re Brady, Tex., Mun. Gas Corp.*, 936 F.2d 212, 218 (5th Cir. 1991) ("[T]he only aspect of the bankruptcy proceeding over which the district courts and their bankruptcy units have exclusive jurisdiction is the bankruptcy petition itself. In other matters arising in or related to title 11 cases . . . , state courts have concurrent jurisdiction." (citation and internal quotation marks omitted)); *Hopkins*, 349 B.R. at 812 (concluding "that state courts retain concurrent jurisdiction over claims brought" by a trustee to recover fraudulent conveyances).

And although the *Gruntz* court stated broadly that a "bankruptcy court[ has] plenary power over core proceedings," 202 F.3d at 1082, *Gruntz* did not overrule *McCarthy*, which stated that a core proceeding "does not equate to exclusive federal jurisdiction," 230 B.R. at 418. *Gruntz* is also distinguishable because there the state court acted in derogation of a bankruptcy court automatic stay. 202 F.3d at 1077. Here, however, the bankruptcy court lifted the stay specifically so that the Trustee could pursue the underlying action. Further, a bankruptcy court's exercise of jurisdiction is permissive, not mandatory. 28 U.S.C. § 157(b)(1) provides that a "[b]ankruptcy judge[ ] *may* hear and determine all cases under title 11 and all core proceedings arising under title 11." (Emphasis added.) There is no language in the statute or *Gruntz* that demands that core proceedings be exclusively within the jurisdiction of bankruptcy courts as against state courts. *See Hopkins*, 349 B.R. at 811 (stating that "[n]othing in *Gruntz* indicates that a bankruptcy court lacks the power to decline jurisdiction over core matters"). Therefore, assuming without deciding that

a fraudulent conveyance action is a core proceeding, we hold that the state district court and the bankruptcy court shared concurrent jurisdiction over this fraudulent conveyance action.

We also reject Superpumper's argument that the district court lacked subject matter jurisdiction because the Trustee lacked standing. "When a bankruptcy petition is filed, all of the debtor's property, other than certain exceptions, becomes part of the bankruptcy estate." *Tower Homes, LLC v. Heaton*, 132 Nev. 628, 632, 377 P.3d 118, 121 (2016) (citing 11 U.S.C. § 541(a) (2012)). "A bankruptcy trustee is charged with administering the estate [including] recovering assets for the creditors' benefit." *Id.* at 633, 377 P.3d at 121. In Nevada "a creditor . . . may obtain . . . [a]voidance of [a fraudulent] transfer." NRS 112.210(1)(a). And 11 U.S.C. § 544(b)(1) provides that a "trustee may avoid any transfer of an interest of the debtor in property . . . that is voidable under applicable law by a creditor holding an unsecured claim . . . ." Further, courts have frequently held that a trustee stands in the shoes of creditors. *See Universal Church v. Geltzer*, 463 F.3d 218, 222 n.1 (2d Cir. 2006) ("[T]he Bankruptcy Code allows the trustee to step into the shoes of a creditor under state law and avoid any transfers such a creditor could have avoided."); *In re MortgageAmerica Corp.*, 714 F.2d 1266, 1275 (5th Cir. 1983) ("11 U.S.C. § 544[ ] allows the bankruptcy trustee to step into the shoes of a creditor for the purpose of asserting causes of action under state fraudulent conveyance acts for the benefit of all creditors."). Thus, it is a trustee's obligation to recover fraudulent conveyances for the estate, and the trustee has the authority to

Supreme Court
of
Nevada

(O) 1947A

7

do so under NRS 112.210(1)(a) and 11 U.S.C. § 544.[1] Therefore, we conclude that the Trustee had standing to maintain this fraudulent conveyance action.[2]

---

[1]Superpumper also argues that the Herbsts did not assign their claim to the Trustee, or that they could not do so under Nevada law. We reject this argument. Although a fraud claim is not assignable, *see Reynolds v. Tufenkjian*, 136 Nev. 145, 150, 461 P.3d 147, 152 (2020), Superpumper has not cited authority for the proposition that a fraudulent conveyance claim is not assignable, *see* 6A C.J.S. *Assignments* § 42 (2021 update) ("Unless it is forbidden by statute or clearly limited by agreement or waiver, any claim may be assigned except one to recover damages for personal injury or one involving a close, personal, and highly confidential relationship." (footnotes omitted)). Further, there are significant differences between the two types of claims. *See, e.g., Sportsco Enters. v. Morris*, 112 Nev. 625, 631, 917 P.2d 934, 937 (1996) (distinguishing the elements of a claim for fraudulent conveyance from fraud). And Superpumper has not provided authority demonstrating that trustees cannot substitute for a creditor in a fraudulent conveyance action.

[2]Superpumper frames its argument about standing as a reason why the district court lacked subject matter jurisdiction. However, this court has never directly subscribed to the view that standing is an aspect of subject matter jurisdiction, and some jurisdictions have held that they are separate principles. *See, e.g.*, Meredith Hoberock, *Standing in Arkansas Courts:* Chubb *Holds That Standing is Not a Component of Subject Matter Jurisdiction*, 64 Ark. L. Rev. 501, 508 (2011) ("The issue of standing in state courts is a matter of state law, and thus state courts are not bound by federal standing principles. Nonetheless, many state courts default to federal standing rules by treating standing as jurisdictional. A few states, however, do not treat standing as a component of subject-matter jurisdiction." (footnotes omitted)); *cf. In re Guardianship of Herrick*, 846 N.W.2d 301, 310 (Neb. Ct. App. 2014) (providing that "[t]he defect of standing is a defect of subject matter jurisdiction"). Nonetheless, because neither party has raised this issue and because we conclude that the Trustee has standing here, we do not address whether standing and subject matter jurisdiction are distinct principles other than to note that we do not necessarily agree with Superpumper's treatment of standing as a part of subject matter jurisdiction.

*Superpumper waived its in rem jurisdiction argument*

Superpumper also argues that the district court did not have subject matter jurisdiction over the Bayuk Trust because only Edward Bayuk was named in the trust's capacity, not the trust itself, seemingly arguing simultaneously that the district court did not have in rem jurisdiction. However, this argument conflates in rem jurisdiction with subject matter jurisdiction. In rem and quasi in rem jurisdiction, like personal jurisdiction, are forms of basis jurisdiction; they are distinct from subject matter jurisdiction. *See Leventhal v. Black & LoBello*, 129 Nev. 472, 477 n.5, 305 P.3d 907, 910 n.5 (2013) (clarifying that in rem jurisdiction is distinct from subject matter jurisdiction); *see also In re Aboud Inter Vivos Tr.*, 129 Nev. 915, 921, 314 P.3d 941, 945 (2013) (noting that a court needs either in rem jurisdiction over the property or in personam jurisdiction over the person in order to enter a judgment, but not both).

This distinction is crucial here because a defense of lack of personal jurisdiction must be raised in a responsive pleading or else it is waived, unlike subject matter jurisdiction, which may be raised at any time. *See* NRCP 12(h)(1)(B) (listing lack of personal jurisdiction as a defense that is waived if not raised in a responsive pleading or made in a Rule 12 motion, but not including lack of subject matter jurisdiction as a waivable defense); *Landreth*, 127 Nev. at 179, 251 P.3d at 166. Given that in rem jurisdiction is analogous to personal jurisdiction, other courts have held, and we agree, that a defendant's objection to in rem or quasi in rem jurisdiction is likewise waived if not timely asserted. *See Gager v. White*, 425 N.E.2d 851, 854, 856 (N.Y. 1981) (providing that in personam, in rem, and quasi in rem jurisdiction are waived if not "raised . . . by a preanswer motion or by pleading it as an affirmative defense"); *see also* 5B Charles Alan Wright, Arthur R. Miller & A. Benjamin Spencer, *Federal Practice and Procedure:*

SUPREME COURT
OF
NEVADA

(O) 1947A

9

*Civil* § 1351 (3d ed. 2021 update) (interpreting Federal Rule of Civil Procedure 12(b)(2), upon which NRCP 12 is modeled, as "sufficiently elastic to embrace a defense or objection that the district court lacks in rem or quasi-in-rem jurisdiction")). Thus, because Superpumper participated in the litigation but did not raise lack of in rem or quasi in rem jurisdiction as a defense in its answer or in a Rule 12 motion, we conclude that it is waived.

*The district court did not abuse its discretion when it allowed attorney-client communications to be disclosed in discovery and admitted into evidence at trial*

Finally, Superpumper argues that the district court improperly permitted attorney-client communications to be disclosed in discovery and admitted at trial. During discovery, the Trustee sent notice of its intent to depose Dennis Vacco, Esq., Morabito's and Superpumper's attorney. Superpumper filed a motion to partially quash the subpoena or for a protective order to safeguard attorney-client communications between Vacco, Superpumper, and Morabito, asserting the common interest privilege. In the discovery commissioner's recommendation, which the district court adopted in its entirety, he determined that the common interest privilege does not apply to the communications. Thereafter, the district court admitted the communications into evidence at trial.

"Discovery matters are within the district court's sound discretion, and we will not disturb a district court's ruling regarding discovery unless the court has clearly abused its discretion." *Canarelli v. Eighth Judicial Dist. Court*, 136 Nev. 247, 251, 464 P.3d 114, 119 (2020) (internal quotation marks omitted). Similarly, the decision to admit evidence is committed to the district court's discretion, "and we will not interfere with the district court's exercise of discretion absent a showing of

palpable abuse." *M.C. Multi-Family Dev., LLC v. Crestdale Assocs., Ltd.*, 124 Nev. 901, 913, 193 P.3d 596, 544 (2008).

Although Superpumper argues the district court erred in determining that the common interest privilege does not apply to the communications at issue here, we need not reach its arguments regarding the contours of the privilege. This is apparent because Superpumper has not met its threshold burden of articulating its claim of privilege. *See* NRCP 26(b)(5)(A) (providing that a party claiming a privilege "must . . . expressly make the claim . . . and . . . describe the nature of the documents, communications, or tangible things" so as to "enable other parties to assess the claim"); *see also In re Foster*, 188 F.3d 1259, 1264 (10th Cir. 1999) (stating that "[a] party claiming the attorney-client privilege must prove its applicability . . . [and] must bear the burden as to specific questions or documents, not by making a blanket claim" (citation omitted)). As the discovery commissioner noted in his recommendation, Superpumper failed to "identif[y] specific information or documents that [it] believe[s] are protected." On appeal, as below, Superpumper has not identified what communications are privileged. Superpumper's blanket invocation of privilege is insufficient to demonstrate that the communications are privileged.

Further, Superpumper has not demonstrated how the admission of any of the communications at trial was prejudicial. *See Wyeth v. Rowatt*, 126 Nev. 446, 465, 244 P.3d 765, 778 (2010) (stating that an error "not affect[ing] a party's substantial rights" does not require reversal unless "but for the alleged error, a different result might reasonably have been reached"); *see also* NRCP 61. Indeed, Superpumper does not specify or point to anything in the record that would demonstrate that a different result

would have occurred if the communications were not admitted. Thus, we hold that the district court did not abuse its discretion when it admitted the allegedly privileged communications into evidence.[3]

## CONCLUSION

We conclude that the state district court had concurrent jurisdiction with the bankruptcy court over the fraudulent conveyance action, and thus the district court had proper subject matter jurisdiction over this action. We also conclude that the Trustee had standing to maintain this fraudulent conveyance action. Additionally, because in rem jurisdiction is akin to personal jurisdiction and lack thereof must be alleged in a preanswer motion or responsive pleading, we further conclude that Superpumper waived this argument, as it failed to do so. Lastly, we conclude that the district court did not abuse its discretion in allowing attorney-client communications to be disclosed in discovery or admitting the communications into evidence at trial, as Superpumper failed to meet its burden of demonstrating that the communications are privileged or that it was prejudiced by the admission of the communications.

---

[3]Superpumper also argues that exhibit 145, which contained one of these communications, was improperly admitted because it was hearsay and lacked foundation. We conclude that the admission of the exhibit does not warrant reversal, as Superpumper does not show how this alleged evidentiary error substantially affected its rights. *See Hallmark v. Eldridge*, 124 Nev. 492, 505, 189 P.3d 646, 654 (2008) (stating that "claims of prejudice concerning errors in the admission of evidence [are reviewed] based upon whether the error substantially affected the rights of the appellant" such that, "but for the error, a different result might reasonably have been expected" (internal quotation marks omitted)).

Accordingly, we affirm the district court's judgment.[4]

_____, C.J.
Hardesty

We concur:

_____, J.
Parraguirre

_____, J.
Stiglich

_____, J.
Cadish

_____, J.
Silver

_____, J.
Pickering

_____, J.
Herndon

---

[4]Although Superpumper also appealed from the district court's order awarding attorney fees and costs, it fails to cogently argue how the award was improper other than to suggest that, if we were to vacate the district court's judgment, the award must also be vacated. Because we affirm the district court's judgment and Superpumper has failed to show how the district court's decision to award attorney fees and costs was an abuse of discretion, we decline to consider this argument. *See Edwards v. Emperor's Garden Rest.*, 122 Nev. 317, 330 n.38, 130 P.3d 1280, 1288 n.38 (2006) (stating that this court need not consider claims that are not cogently argued or supported by relevant authority); *see also Gunderson v. D.R. Horton, Inc.*, 130 Nev. 67, 80, 319 P.3d 606, 615 (2014) (reviewing an award of attorney fees and costs for an abuse of discretion).