141 Nev., Advance Opinion 18

# IN THE SUPREME COURT OF THE STATE OF NEVADA

SCOTT BLACK; JEROME NADAL; AND GEORGE SMITH,
Petitioners,
vs.
THE EIGHTH JUDICIAL DISTRICT COURT OF THE STATE OF NEVADA, IN AND FOR THE COUNTY OF CLARK; AND THE HONORABLE JOSEPH HARDY, JR., DISTRICT JUDGE,
Respondents,
and
SEAN GOODCHILD; MIKE MEADER; DAVID MORTON; AND KLAUS MOELLER,
Real Parties in Interest.

No. 88115



FILED

APR 17 2025

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY
CHIEF DEPUTY CLERK

Original petition for a writ of prohibition or mandamus challenging a district court order denying a motion to dismiss by certain directors in a shareholders' action.

*Petition granted.*

McDonald Carano LLP and John A. Fortin, Aaron D. Shipley, and Emily M. Dennis, Las Vegas,
for Petitioners.

Fernald Law Group APC and Brandon C. Fernald, Las Vegas; Durrant Law Firm, APC, and John Durrant, Los Angeles, California,
for Real Parties in Interest.

25-17244

BEFORE THE SUPREME COURT, EN BANC.

*OPINION*

By the Court, PICKERING, J.:

This original petition for a writ of prohibition or mandamus challenges a district court order denying a motion to dismiss filed by certain directors in a shareholders' action. We hold that the claim against the directors is derivative, not direct, and that the district court should have granted the motion to dismiss. For these reasons, we grant the petition for extraordinary writ relief.[1]

I.

Petitioners Scott Black, George Smith, and Jerome Nadal were members of the board of directors of now-defunct Globe Photos, Inc. Globe owned a portfolio of millions of images of celebrities and musicians, including Marilyn Monroe, the Beatles, and Jimi Hendrix, some taken by famous photographers such as Frank Worth.

Real parties in interest Sean Goodchild, Mike Meader, David Morton, and Klaus Moeller (the Shareholders) were Globe shareholders who claim that "[t]here were many viable and obvious paths for Globe to capitalize on these assets," such as "market[ing] and [selling them] *en masse* to a large media company," selling prints or originals, or licensing them. In

---

[1]We originally resolved this petition by unpublished order. Petitioners filed a motion to publish the order as an opinion, which we grant. *See* NRAP 36(e). We now issue this opinion in place of the order. The Honorable Nancy Allf, District Judge, ruled on the motion to dismiss. After her retirement, the matter was administratively reassigned to the Honorable Joesph Hardy, Jr., District Judge.

SUPREME COURT
OF
NEVADA

(O) 1947A

2020, despite the value of its portfolio, Globe sought Chapter 7 bankruptcy protection. The trustee liquidated Globe's assets to pay the secured creditors, which left nothing for unsecured creditors or the Shareholders.

Three years later, in 2023, the Shareholders sued Petitioners, among others, in Nevada state court. They alleged that Petitioners breached their fiduciary duties by mismanaging Globe's assets and liabilities, failing to sell a small number of photographs to meet current debts, and, ultimately, approving "a sham bankruptcy." In their complaint, the Shareholders acknowledge that Globe had some cash flow issues and past-due debts but allege that these were modest and that "Globe's Board and management could have remedied them completely and quickly by selling a small portion of the photos owned by Globe." According to the Shareholders, "there was absolutely no legitimate need for the bankruptcy," and Petitioners' "approval of the Chapter 7 bankruptcy was not made in good faith or undertaken with due care."

The Shareholders' complaint describes an elaborate scheme involving Globe creditor Falcon Capital; Falcon's managing partner, Wilson Rondini III; and Globe CEO, board member, and shareholder Stuart Scheinman—all of whom the complaint names as defendants but none of whom is a Petitioner here. The Shareholders allege that Falcon, Rondini, and Scheinman conspired to defraud Globe and the plaintiff Shareholders by contriving a financial crisis that Scheinman could use to persuade Globe's other board members to put the company into Chapter 7 bankruptcy. In bankruptcy, Globe's assets would be liquidated. A secured creditor, Falcon, would acquire the assets by credit bidding at fire-sale prices, then share its ill-gotten gains with Scheinman and Rondini. Falcon failed to perfect its security interest, so Globe's assets went to pay other

SUPREME COURT
OF
NEVADA

(O) 1947A

secured creditors. But the bankruptcy and liquidation sale that followed left nothing for unsecured creditors or shareholders.

The Shareholders assert multiple claims for aiding and abetting, fraud, and misrepresentation against Falcon, Rondini, and Scheinman. Against Petitioners, by contrast, they assert only one claim: "Breach of Fiduciary Duty/Duty of Loyalty." The Shareholders allege that Petitioners, as Globe board members, "owed the Plaintiffs a fiduciary/loyalty duty to act in their best interest," which they breached by not "developing the business in good faith and with due care" and by approving the bankruptcy filing.

The complaint alleges that Petitioners "acquiesced to Scheinman," either because of "inattention," "a deliberate effort to aid Falcon, or out of a desire to protect themselves" from liability because they had mismanaged Globe's assets and its directors' and officers' liability insurance policy had expired without being renewed. Of note, the Shareholders disclaimed any allegation of intentional misconduct or fraud against Petitioner Smith, stating that as to him "[i]t's a breach of fiduciary duty pleading." This concession applies equally to Petitioners Black and Nadal, whose conduct the complaint does not meaningfully distinguish from Smith's.

In district court, Petitioners moved to dismiss the complaint. They argued that the Shareholders lack standing to sue them for breach of fiduciary duty because that claim seeks to redress harm to Globe. This made the claims property of Globe's bankruptcy estate, which the trustee controlled, and over which the bankruptcy court had exclusive jurisdiction. Petitioners alternatively argued that the complaint should be dismissed for



failure to state a claim upon which relief could be granted and for not meeting the heightened pleading standard for fraud.

The Shareholders disagreed. Characterizing their claim against Petitioners as direct and not derivative, they argued that the alleged breach of fiduciary duty harmed them specifically, while it benefited other shareholders, notably, Scheinman. On this basis, they maintained that the claim against Petitioners did not constitute property of Globe's bankruptcy estate and was theirs to assert directly. The Shareholders also argued that they pleaded sufficient facts in their complaint to defeat the motion to dismiss.

The district court denied Petitioners' motion to dismiss. It concluded that the Shareholders pleaded "a direct cause of action and not a derivative one" against Petitioners, so they had standing, and the district court had jurisdiction, to proceed. It also rejected Petitioners' challenge to the sufficiency of the complaint's allegations to state a claim for breach of fiduciary duty.

Petitioners now seek a writ of prohibition or mandamus directing the district court to vacate its order and grant their motion to dismiss.

## II.

### A.

A writ of prohibition or mandamus is an extraordinary remedy, and "[t]he decision to entertain a petition for [writ relief] lies within this court's discretion." *Gen. Motors Corp. v. Eighth Jud. Dist. Ct.*, 122 Nev. 466, 469, 134 P.3d 111, 113-14 (2006). Prohibition may issue "to arrest proceedings the district court or other tribunal exercising judicial functions lacks jurisdiction to conduct," while mandamus serves "to compel an act

that the law requires." *Archon Corp. v. Eighth Jud. Dist. Ct.*, 133 Nev. 816, 819, 407 P.3d 702, 706 (2017). For either form of traditional writ to issue, "the case should be one 'where there is not a plain, speedy and adequate remedy in the ordinary course of law.'" *Id.* (quoting NRS 34.170 (mandamus); NRS 34.330 (prohibition)). And, while this court will ordinarily "decline to consider writ petitions challenging district court orders denying motions to dismiss," *Int'l Game Tech., Inc. v. Second Jud. Dist. Ct.*, 124 Nev. 193, 197, 179 P.3d 556, 558 (2008), this court has considered such petitions where the district court lacked jurisdiction to proceed, *Viega GmbH v. Eighth Jud. Dist. Ct.*, 130 Nev. 368, 374, 328 P.3d 1152, 1156 (2014) (prohibition), where "no factual dispute exists and the district court is obligated to dismiss an action pursuant to clear authority," *Int'l Game Tech.*, 124 Nev. at 197, 179 P.3d at 559 (mandamus), or where "an important issue of law needs clarification and considerations of sound judicial economy and administration militate in favor of granting the petition," *id.*

"Standing is the legal right to set judicial machinery in motion." *Heller v. Legislature*, 120 Nev. 456, 460, 93 P.3d 746, 749 (2004) (internal quotation marks omitted). A plaintiff's lack of standing presents "a question of law reviewed de novo," *Logan v. Abe*, 131 Nev. 260, 263, 350 P.3d 1139, 1141 (2015) (internal quotation marks omitted), that may warrant writ relief, *see Parametric Sound Corp. v. Eighth Jud. Dist. Ct.*, 133 Nev. 417, 421, 401 P.3d 1100, 1104 (2017). A plaintiff's lack of standing may or may not support a writ of prohibition, which corrects acts in excess of a tribunal's jurisdictional authority, as opposed to a writ of mandamus, which corrects acts that are jurisdictionally permissible but amount to an abuse of discretion or clear error of law. *See Superpumper, Inc. v. Leonard*, 137 Nev.

SUPREME COURT
OF
NEVADA



6

429, 433 n.2, 495 P.3d 101, 106 n.2 (2021) (noting that this court has not decided whether, as a matter of state law, "standing and subject matter jurisdiction are distinct principles"). This court nonetheless issued a writ of prohibition in *Brunk v. Eighth Judicial District Court*, No. 76052, 2019 WL 5110141, at *8 (Nev. Oct. 11, 2019) (unpublished), holding that the plaintiff shareholder lacked standing to assert—and the district court lacked jurisdiction over—a derivative claim on behalf of a bankrupt foreign corporation. And, indeed, the Shareholders concede that prohibition would be the appropriate writ if their claim is deemed derivative and not direct.

### B.

When a corporation enters Chapter 7 bankruptcy, the property it owns—including its legal claims—becomes part of the bankruptcy estate. 11 U.S.C. § 541; *In re McKee*, 90 F.4th 1244, 1247 (9th Cir. 2024) ("The filing of a chapter 7 petition creates a bankruptcy estate, which generally consists of all the debtor's non-exempt property."). Thus, derivative claims—the corporation's own claims—become part of the bankruptcy estate. *Harrington v. Purdue Pharma L. P.*, 603 U.S. 204, 219 (2024). The bankruptcy trustee has exclusive standing to assert derivative claims. 11 U.S.C. §§ 323, 363, 541; *Est. of Spirtos v. One San Bernardino Cnty. Superior Ct. Case No. SPR 02211*, 443 F.3d 1172, 1176 (9th Cir. 2006) ("[T]he bankruptcy code endows the bankruptcy trustee with the exclusive right to sue on behalf of the estate."); *see Brunk*, 2019 WL 5110141, at *2 ("[I]f [the shareholder's] claims are derivative, he lacks standing as a result of [the corporation's] bankruptcy, which rendered any such claims a part of the corporation's bankruptcy estate, over which the estate's trustee has exclusive standing to litigate."); *see also* 11 U.S.C. § 1109(b) (Chapter 11 bankruptcy). Unless sold or abandoned with the bankruptcy court's

SUPREME COURT
OF
NEVADA

(O) 1947A

approval, the estate's property—including its claims against third parties—remain part of the bankruptcy estate, even after discharge. *See In re Lahijani*, 325 B.R. 282, 287 (B.A.P. 9th Cir. 2005).

The parties do not dispute that if the Shareholders' claim against Petitioners is *derivative*, the Shareholders lack standing because the claim is part of Globe's bankruptcy estate. If the claim is *direct*, however, the Shareholders may personally assert the claim in state court because the claim belongs to them individually—not to Globe's bankruptcy estate. The parties' disagreement is limited to the issue of whether the claim against Petitioners is properly classified as direct or derivative. Because Globe was incorporated in Delaware, we analyze this issue under Delaware law. *See Kennedy v. Venrock Assocs.*, 348 F.3d 584, 589 (7th Cir. 2003) ("The question whether a suit is derivative by nature or may be brought by a shareholder in his own right is governed by the law of the state of incorporation . . . .").

*Tooley v. Donaldson, Lufkin & Jenrette, Inc.*, and its progeny control our inquiry. 845 A.2d 1031, 1033 (Del. 2004); *see Brookfield Asset Mgmt., Inc. v. Rosson*, 261 A.3d 1251, 1255 (Del. 2021) (reaffirming *Tooley* as the correct test). The *Tooley* test asks "(1) who suffered the alleged harm (the corporation or the suing stockholders, individually); and (2) who would receive the benefit of any recovery or other remedy (the corporation or the stockholders, individually)?" 845 A.2d at 1033. For a claim to be derivative, the corporation must have suffered the harm and it must receive the direct benefit of any remedy, not the suing shareholders (although they may benefit indirectly). *Id.* at 1036. A paradigmatic derivative claim is one involving corporate waste or mismanagement of assets. *See Parnes v. Bally Ent. Corp.*, 722 A.2d 1243, 1245 (Del. 1999) (stating that "a claim alleging

(0) 1947A

corporate mismanagement, and a resulting drop in the value of the company's stock, is a classic derivative claim"). This is because "the alleged wrong harms the corporation directly and all of its stockholders indirectly." *Id.*

By contrast, for a claim to be direct, the shareholders individually must have suffered the harm, and they must be the direct recipient of any remedy. *Tooley*, 845 A.2d at 1036. Under *Tooley*, to plead a direct claim, "[t]he stockholder must demonstrate that the duty breached was owed to the stockholder and that he or she can prevail without showing an injury to the corporation." *Id.* at 1039. Stated differently, "[t]he stockholder's claimed direct injury must be independent of any alleged injury to the corporation." *Id.* "Classic" direct claims concern shareholders' (1) "right to vote," (2) "right to compel payment of a contractually specified dividend," and (3) "right to own and alienate shares." *In re Activision Blizzard, Inc. Stockholder Litig.*, 124 A.3d 1025, 1049-50 (Del. Ch. 2015).

The Shareholders seek damages from Petitioners for their alleged breach of fiduciary duty. "In the context of a claim for breach of fiduciary duty," the *Tooley* test supports the following inquiry: "Looking at the body of the complaint and considering the nature of the wrong alleged and the relief requested, has the plaintiff demonstrated that he or she can prevail without showing an injury to the corporation?" 845 A.2d at 1036 & n.9 (quoting *Agostino v. Hicks*, No. Civ. A. 20020-NC, 2004 WL 443987, at *7 (Del. Ch. Mar. 11, 2004), *as revised*, 845 A.2d 1110 (Del. Ch. 2004)). Here, the answer to that question is no.

The Shareholders allege that Petitioners "owed [them] a fiduciary/loyalty duty to act in their best interest," which they breached by mismanaging Globe's assets and liabilities and approving its Chapter 7 bankruptcy filing. Once in bankruptcy, Globe was liquidated and its assets sold for a song. As a result, the Shareholders were "depriv[ed] . . . of the value of their equity investments," and their "shares [of stock], which they had purchased for millions of dollars were now completely worthless."

In district court, the Shareholders expressly disclaimed any fraud or intentional misconduct by Petitioners. They allege breach of fiduciary duty/duty of loyalty by Petitioners as board members based on corporate waste and mismanagement. Under the *Tooley* framework, Globe suffered the direct harm because its assets were wasted and sold off cheaply; and Globe would receive the benefit of any eventual recovery because the alleged wrongdoers—Petitioners—would be required to compensate Globe for the harm they caused it to suffer. The Shareholders would, of course, benefit indirectly because the value of their shares would be restored if Globe's assets or their value were returned. But this does not convert their claim to a direct one. *See* Ronald J. Columbo, *Law of Corp. Officers & Dirs.: Rts., Duties & Liabs.*, § 9:2 (Nov. 2024 update) (stating that "although individual stockholders are obviously indirectly harmed whenever an unlawful action depletes corporate assets, such a claim is generally considered as involving primarily injury to the corporate entity, which may only be asserted by the corporation or by a stockholder suing derivatively"). The Shareholders cannot demonstrate—as to their claim against Petitioners—that they "can prevail without showing an injury" to Globe. *Tooley*, 845 A.2d at 1039.




The Shareholders disagree. While they acknowledge that Delaware law and *Tooley* apply, they argue that a direct action lies when a scheme aims to benefit some shareholders—here Scheinman, who as Falcon's and Rondini's alleged coconspirator would share in their ill-gotten gains—at the expense of others. As support, the Shareholders cite *Gatz v. Ponsoldt*, 925 A.2d 1265 (Del. 2007), for the proposition that "a valid direct action exists when a 'fiduciary exercises its control over the corporate machinery to cause an expropriation of economic value and voting power from the public shareholders' to himself or others." Ans. to Writ Pet., at 28 (quoting *Gatz*, 925 A.2d at 1281). But *Gatz* relied on *Gentile v. Rossette*, 906 A.2d 91 (Del. 2006), for its holding. *See Gatz*, 925 A.2d at 1280-81. And in 2021, the Delaware Supreme Court overruled *Gentile*, holding that *Gentile* erred, first in suggesting that a shareholder who suffers a special injury that other shareholders do not may bring a direct claim, and second in its focus on the wrongdoer. *Brookfield*, 261 A.3d at 1273-74. As *Brookfield* confirms, a claim is derivative if the harm alleged is to the corporation and then by extension to the shareholders. *Id.* at 1277. Not only is this rule consistent with *Tooley*, but it also eliminates the risk of an impermissible double recovery and thereby avoids "the potential practical problem of allowing two separate claimants to pursue the same recovery." *Id.*

The Shareholders also rely on *In re MultiPlan Corp. Stockholders Litigation*, 268 A.3d 784, 804-05 (Del. Ch. 2022), but that case is unhelpful. The shareholders in *MultiPlan* alleged that the board's deception interfered with their voting and redemption rights, which the shareholders had a direct right of action to vindicate. *Id.* at 799; *cf. Activision*, 124 A.3d at 1049-50 (noting that an alleged infringement of a shareholder's voting rights ordinarily constitutes a direct claim). The

Shareholders do not allege that they have an analogous right. The Shareholders further rely on *Kollman v. Cell Tech International, Inc.*, 279 P.3d 324 (Or. Ct. App. 2012) (applying Delaware law), but that case is also unhelpful. The defendant in *Kollman* eliminated the plaintiff's roles as officer and director and terminated the plaintiff's employment. *Id.* at 336. This "advanced [the defendant's] goal of eliminating [the plaintiff's] participation in *every aspect of corporate management and affairs.*" *Id.* (emphasis added). The Shareholders' alleged injury here is thus materially different from the one in *Kollman*.

In sum, under *Tooley* and *Brookfield*, the Shareholders' breach of fiduciary duty claim against Petitioners is derivative, not direct. Because the Shareholders' claim against Petitioners is derivative, it is the property of Globe's bankruptcy estate. Only the trustee has standing to assert such a claim on behalf of Globe's bankruptcy estate. 11 U.S.C. §§ 323, 363, 541; *Spirtos*, 443 F.3d at 1176; *see Delgado Oil Co. v. Torres*, 785 F.2d 857, 860 (10th Cir. 1986); *see also* 11 U.S.C. § 1109(b) (Chapter 11 bankruptcy). The Shareholders therefore lack standing to assert this claim.

### III.

The district court plainly erred in denying Petitioners' motion to dismiss the Shareholders' claim against them. We therefore grant the petition for extraordinary writ relief. The clerk of this court shall issue a

SUPREME COURT
OF
NEVADA

(O) 1947A

writ of prohibition instructing the district court to vacate its order denying Petitioners' motion to dismiss and to instead enter an order granting it.

_____ Pickering _____, J.
Pickering

We concur:

_____, C.J.
Herndon

_____ J.
Parraguirre

_____, J.
Bell

_____, J.
Stiglich

_____, J.
Cadish

_____, J.
Lee

SUPREME COURT
OF
NEVADA

(O) 1947A